THE VILLAGE OF NIAGARA FALLS, Respondent, *v* JOHN SALT, Appellant.

*Power of the trustees of the village of Niagara Falls to prohibit runners and solicitors for hotels, etc.— they may prohibit persons from so doing though such persons remain on their own property —* 1855, *chap.* 98, *sec.* 1, *sub.* 4.

Subdivision 4 of section 1 of chapter 98 of 1855, amending the charter of the village of Niagara Falls, as amended by chapter 57 of 1862, provides that "the trustees of the said village shall have power, in their discretion, in addition to the powers granted by section fifty-eight" of the general act of 1847, providing for the incorporation of villages, "to restrain and prohibit all runners, solicitors or guides for boats, carriages, railroads, public houses, places of resort or for any other place or purpose whatsoever." Pursuant to the power thereby conferred, the board of trustees passed a by-law, enacting "that all persons *are prohibited within the corporate limits of this village* from running for or soliciting any passenger or passengers, or person or persons, for any steamboat, or other public or private conveyance, or for any tavern, boarding-house, store or other place of resort, under penalty of not less than one dollar nor more than twenty-five dollars for each offense."

*Held,* that the power given by the charter to the trustees to restrain all runners solicitors, etc., was not limited to the public places or streets of the village, but the power was given to restrain them wherever they might be within the corporate limits, even though they might be upon their own private property.

Appeal from a judgment of the County Court of Niagara county, affirming a judgment of the police justice of the village of Niagara Falls.

*Frank Brundage,* for the appellant.

*W Cary. Ely,* for the respondent.

HAIGHT, J.:

This action was brought to recover a penalty. The facts were agreed upon, and are, in substance, as follows : The defendant was one of the lessees and proprietors of the Western Hotel, in the village of Niagara Falls. The premises are on the northerly side of Falls street, directly opposite Second street, and fronting on the same side of Falls street as the depot of the New York Central Railroad Company, into which run several different lines of railways. Large numbers of passengers emerging from the depot pass down the same side of the street to the Niagara river and other points of interest, and in doing so pass the defendant's hotel. The hotel stands nine feet from the line of the street, and in front is a stoop or verandah about seven feet in width, running to within two feet of the street line. In front of the stoop are planks nailed crosswise over the planks of the sidewalk, which occupy the remaining two feet of the defendant's premises. The defendant and his son ran the house as an inn or tavern, and kept conveyances which were used for the conveyance of passengers for hire. On the 30th day of May, 1886, about eight o'clock A. M., just after the arrival of a train at the depot, the defendant, while standing upon that portion of the premises marked by the planks nailed down as aforesaid, at about the center of the same, accosted four persons, who were passing along the sidewalk, saying : " Breakfast is all ready, gentlemen ; if everything is not satisfactory your money will be refunded." One of the party said they had been to breakfast. The party just halted and passed on. The defendant, standing on the same planks, again accosted them, saying : " Would you like a carriage to go around and see the points ? " The party kept on down the street, without response.

Subdivision 4 of section 1 of the defendant's charter, as amended by section 1 of chapter 57 of the Laws of 1862, provides that, " The trustees of said village shall have power in their discretion, in addition to the powers granted by section 58 of an act entitled ' An act to provide for the incorporation of villages, passed December 7, 1847, * * * to restrain and prohibit all runners, solicitors or guides for boats, carriages, railroads, public-houses, places of resort or for any other place or purpose whatsoever."

Under and by virtue of this charter the board of trustees of the village, on the 5th of September, 1877, passed and duly published section 1 of chapter 5 of the by-laws of the village, which is still in force, and is as follows : " Be it enacted as follows, that all persons are prohibited, within the corporate limits of this village, from running for or soliciting any passenger or passengers, or person or persons, for any steamboat or other public or private conveyance, or for any tavern, boarding-house, store or other place of resort, under penalty of not less than one dollar, nor more than twenty-five dollars for each offense."

It will be observed that the by-law in question is fully within the provisions of the charter and authorized by it. It is contended, however, that because the defendant stood upon his own land, upon the planks in front of his piazza outside of the sidewalk, that he was not within the public street, and that consequently he was not within the provisions of the charter or by-law excluded from soliciting patronage for his hotel or tavern. But we do not think the charter or by-law in question should be so construed. The charter gives to the trustees of the village the power to restrain and prohibit all runners, solicitors or guides, etc. The power to restrain and prohibit them is not limited to the public places or streets of the village, but the power is given to restrain them wherever they may be within the corporate limits. The by-law is equally explicit, for by it all persons are prohibited, within the corporate limits from running for or soliciting any person or persons for any public or private conveyance, or for any tavern, boarding-house, etc. Had it been the intention of the legislature or of the trustees to limit solicitation for passengers and patronage to the public streets, such limitation would doubtless have appeared by express terms in the provision of the charter and by-law.

Nor do we think that the charter or ordinance in question is a violation of any common law right, for no person has the right to so conduct himself or use his property as to annoy and vex others when passing along the public way. At common law the highways were under the jurisdiction and control of the king ; and in this country that of the sovereign power of the State. In municipal governments the legislature has seen fit, in most instances, to require the municipality to take charge of and keep the streets in

proper repair for the use of the public. But it still retains the power to preserve peace and good order and protect the people in their unmolested use of the highways. It may be just as much annoyance to travelers to be accosted by a person standing a few inches from the sidewalk, over which they are passing, as it would be to be accosted by a person standing in the middle of the street.

It is suggested that if the soliciting from private property of those passing upon the street is an offense, that then if the village trustees saw fit, they could pass a by-law prohibiting persons from singing or playing upon the piano in their own houses, so that the sound could be heard upon the streets. It does not, however, appear to us that there is any force in the suggestion, for the reason that no power is given the trustees under the charter to pass by-laws restricting singing or music in private houses.

In the case of the *City of Rochester* v. *Close* (35 Hun, 208) it was held that the charter did not authorize the ordinance, and for that reason the ordinance could not be enforced. The other cases to which the appellant refers, were in reference to entirely different ordinances or by-laws, and have no application to the question under consideration.

It appears to us that the trial court and County Court properly held that there was a violation of the by-law in question, and that the defendant was properly held liable for the penalty.

The judgment should, therefore, be affirmed.

SMITH, P. J., and BRADLEY, J., concurred.

Judgment affirmed.